## IN THE UNITE STATES DISCRITCT COURT
## FOR THE EASTERN DISTRICT OF PENNSYVANIA

Qianjiang Kuojin Van                                  Case Number: 2:24-cv-05014-js
4114B Main Street
Suite A165
New York, NY 11355
Plaintiff
V.                                                              REC'D JUL 1 6 2025
City of Philadelphia
Thomas Rybakowski
Gene Stallworth
1401 JFK Blvd, 11ᵗʰ FL
Philadelphia, PA 19102
Defendants

## AMENDED COMPLAINT

Plaintiff, Qianjiang Kuojin Van, brings this civil rights action under 42 U.S.C. § 1983 to remedy constitutional violations committed by the City of Philadelphia and its officials. He alleges as follows:

### INTRODUCTION

1.       Plaintiff purchased the property at a City sheriff's sale and intended to use it as an owner-occupied residence. In March 2021, a portion of the rear wall collapsed. Plaintiff immediately hired an engineer, applied for a building permit, removed the remaining rear walls, and completed the necessary repairs—all before the property was demolished by Defendants.

2.       During the project, City inspectors arbitrarily canceled valid permits without notice or valid justification and issued duplicative or contradictory violation notices. Ultimately, the City demolished the house even after it had been repaired.

3.       In addition to the demolition, the City imposed substantial abatement fees and penalties on Plaintiff, further compounding his financial harm.

4.       Many of Defendants' actions were carried out under official policies, customs, and practices that grant inspectors unchecked discretion to cancel permits, halt construction, and designate properties as imminently dangerous—without requiring

professional qualifications, independent review, or oversight—resulting in unauthorized demolitions.

5.      Plaintiff seeks compensatory and punitive damages, injunctive relief, attorney's fees, and any other relief the Court deems just and proper under the law.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

7.      Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) because all Defendants reside here and the relevant events occurred here.

## PARTIES

8.      Plaintiff is a New York resident and was the lawful owner of 3427 N. 18th Street, Philadelphia, at all relevant times.

9.      Defendant City of Philadelphia is a Pennsylvania municipal corporation that oversees the employees of Department of Licenses & Inspections (L&I) and is responsible for the policies and actions leading to the events in this Complaint.

10.     Defendant Thomas Rybakowski is a supervisor within L&I, Contractual Services Unit. He personally participated in the demolition of Plaintiff's property despite knowing that repairs were substantially completed and appeal was still pending. He is sued in both his individual and official capacities.

11.     Defendant Gene Stallworth is a building inspector employed by the L&I. He " applied for" demolition permit using wrong information before the City's appeal and permit deadlines had expired, in violation of published policy and Plaintiff's procedural rights. He is sued in both his individual and official capacities.

## FACTUAL BACKGROUND

Purchase and Initial Repairs

12. In March 2021, a portion of the rear wall of Plaintiff's house collapsed. He immediately hired an engineer, and sought a make-safe permit. The engineer advised him removing the rear wall but found the front in good condition.

Initial Permit and Investor Interference

**13.** The first permit was issued on July 15, 2021, but revoked on July 21 due to a misunderstanding between the homeowner and contractor.

**14.** That day, an investor who had repeatedly tried to buy the house warned the Appellant it would be demolished unless sold to him. He claimed to have connections with L&I and offered half the prior price, saying he could stop it. The next morning, a crew arrived but couldn't tear down the sturdy front wall. The investor later called L&I to proceed with the demolition.

Permit Reinstated and Abrupt Revocation

**15.** Plaintiff obtained a permit valid through March 17, 2022. After passing the required initial L&I inspection on August 16, 2021, work began. On November 3, 2021, an inspector abruptly revoked the permit without notice and posted an 'imminently dangerous' notice, halting all work.

Appeal to BBS and Red Notice Overturned

**17.** Plaintiff appealed to the Board of Building Standards (BBS), seeking a determination that the property was not imminently dangerous and requesting removal of the red notice, as the rear walls had already been demolished and cleared. The BBS granted the appeal and instructed the Appellant to obtain a standard permit to repair the front porch. The BBS found that the property was not imminently dangerous and reclassified the violation as "standard," citing the substantial progress already made.

Permit Reissued, Work Resumes, and Second Cancellation

**18.** A new permit was issued, and work resumed after passing inspection on January 24, 2022. On February 28, an inspector suddenly canceled it again without prior notice.

Work Completed Before Permit Cancellation

19. Despite limited workable days due to winter weather, the contractor made steady progress--repairing the front porch, installing a new roof, rebuilding the foundation, and clearing debris... the cancellation lacked any valid basis.

New Violation Notice Issued

**20.** On March 8, 2022, a new violation notice was issued, repeating the same claim as before—that the "rear wall collapsed"—even though the rear wall had been fully removed before November 3, 2021.

Second Appeal and Permit Cancellation Pattern

**21.** On March 18, 2022, Plaintiff filed a second appeal with the Board of Building Standards (BBS), which was accepted and assigned Case No. HA2022-001304. The appeal raised the ongoing problem of a repeating and unsustainable cycle:

permit application → permit issued → work begins → permit canceled → new application → new permit issued → work resumes → permit canceled again.

**22.** Plaintiff argued that this pattern imposed unreasonable financial and logistical burdens, with no certainty as to how long a new permit would remain valid. He asked the BBS to halt the repeated cancellations and reinstate the permit so he could complete the final steps required for inspection and resolve the violation.

**23.** While awaiting a hearing, Plaintiff experienced serious illness. After recovering, he contacted the BBS for an update but was told to continue waiting for a hearing.

Final Violation Notice Received – September 3, 2022

**24.** On September 3, 2022, Plaintiff received a "Final Violation Notice" dated August 25, 2022, sent via certified mail with return receipt. This was the third such notice, repeating the same allegation contained in two prior violation notices—issued on March 17, 2021, and March 8, 2022—claiming that the "rear wall collapsed," rendering the property "imminently dangerous."

**25.** The notice directed the Plaintiff to hire a licensed engineer to develop a repair plan and submit an application package for a new permit. It further stated that the property owner had five days to file an emergency appeal.

BBS Inquiry and Attempt to Halt Demolition

**26.** On September 6, 2022—the first business day after receiving the final violation notice—Plaintiff contacted the Board of Building Standards to ask why L&I was proceeding with demolition while the BBS appeal was still pending. A BBS staff member contacted Thomas Rybakowski and later informed Plaintiff that stopping the demolition might be difficult. She advised Plaintiff to speak directly with Mr. Rybakowski.

**27.** The Plaintiff attempted to contact Mr. Rybakowski by phone but was unsuccessful. On September 19, 2022, the Plaintiff met with Mr. Rybakowski in person, presented photographs of the repaired structure, and formally requested that the demolition be

halted. Mr. Rybakowski refused and stated, "You told the BBS (appeal body) a lot," a comment that suggested retaliatory intent.

Emergency Appeal Filed and New Permit Application Submitted

**28.** The Plaintiff filed an emergency appeal with the BBS on September 7, 2022 (see Exhibit: Emergency Appeal Package). On September 9, 2022, he went to the L&I office to submit a new permit application package, all within the 10-day timeframe set by L&I.

**29.** The Plaintiff applied for the permit for two primary reasons:

(a) He understood that the violation case could not be closed without a final inspection, but that an inspection could not take place without a valid permit. Though the hazardous conditions had already been addressed, the violation remained open technically.

(b) The Plaintiff believed that certain L&I employees were attempting to seize his property under false pretenses, using an unsubstantiated claim of "imminently dangerous" conditions as a pretext.

Accordingly, applying for a new make-safe permit was urgent to resolve the violation notice and protect his property.

Demolition Permit Sought in Violation of Legal Obligations

**30.** The final violation notice instructed Plaintiff to either file an emergency appeal or apply for a permit, and assured him that compliance with these instructions would resolve the violation rather than demolition. Relying on this notice, Plaintiff immediately took steps to comply, including submitting both applications before the stated deadlines.

**31.** However, instead of honoring the City's own representations, Inspector Gene Stallworth applied for a demolition permit on September 9, 2022, contrary to legal responsibility. As a result, Plaintiff wasted time, effort, and money hiring professionals and paying application fees, all in reliance on the City's false assurances.

**32.** The violation notice cited only the rear wall as dangerous; no other part of the structure was identified as hazardous. In fact, the rear wall had already been removed months earlier, and Plaintiff's permit application was submitted solely to allow for final inspection and closure of the violation.

**33.** Nevertheless, Defendants used the prior rear wall issue as a pretext to demolish the structurally sound front portion of the home. Inspector Stallworth directed the demolition

of the front structure without submitting a formal permit application or any supporting documentation, as later confirmed by the Office of Open Records.

**34.** The demolition permit was issued within a single day—likely based on an informal or verbal request—thereby bypassing all required procedural safeguards. This allowed Defendants to demolish a portion of the property not identified in the violation notice, in violation of Plaintiff's due process rights.

<u>Injunction Sought and Counterclaim Filed</u>

**35.** On September 9, 2022, upon learning that the City intended to demolish his property imminently, Plaintiff filed a civil action seeking to stop the demolition. In response, the City not only opposed the requested injunction but also filed a counterclaim demanding substantial statutory fines, calculated as daily penalties from March 26, 2021, through September 12, 2022.

<u>False Statements in Preliminary Injunction Hearing</u>

**36.** During the preliminary injunction hearing, Defendants made false and misleading representations to the Court, including the claim that the rear wall was still collapsed as of September 19, 2022—even though it had been removed in November 2021 and the property had undergone substantial repairs.

**38.** The court denied Plaintiff's motion before the scheduled hearing took place. Plaintiff has appealed, and the matter remains pending.

**39.** Defendants proceeded with demolition on or about September 25, 2022, and completed it on November 2, 2022 despite an appeal pending. After demolition related works, the City imposed substantial abatement fee, penalties and increased interest to the land, making it financially burdensome, unmarketable, and effectively worthless.

## CLAIMS FOR RELIEF

**COUNT ONE — Monell Liability: Unconstitutional Policies, Customs, and Practices**

40. The City of Philadelphia maintains an official policy—published in publicly available procedures—that allows building inspectors to unilaterally designate a property as "imminently dangerous" based solely on their discretion. This policy,

and its consistent implementation by the Department of Licenses & Inspections (L&I), satisfies the requirements for Monell liability under 42 U.S.C. § 1983.

41. Under this policy, an inspector may classify a property as imminently dangerous without any requirement to consult a licensed structural engineer, enter or inspect the interior, or provide advance notice or written explanation to the owner. Even when other qualified professionals, such as licensed engineers or the Board of Building Standards (BBS), have found the structure to be safe or repairable, the inspector's discretionary designation prevails.

42. In practice, many City inspectors—including supervisors such as Mr. Rybakowski —lack professional engineering credentials or structural qualifications. Yet they are empowered to make final determinations about building safety based solely on visual impressions from outside the structure, without a structural investigation or meaningful review. The policy does not require written findings, verification, or approval by a superior or independent party.

43. This unchecked authority creates a high risk of abuse and opens the door to corruption. Inspectors can declare a building "imminently dangerous" to prevent lawful repairs, escalate fines, and initiate demolition—particularly when the property is in a valuable or desirable location. Once demolished and excessive fines imposed, the City can pursue sheriff's sale to transfer property to insiders or connected investors at little cost.

44. This precise pattern occurred in Plaintiff's case. Despite:
- Two licensed engineers certifying the house was not imminently dangerous after November 3, 2021;
- A ruling by the BBS confirming the violation was downgraded to "standard"; and
- Photographs taken by the City's own inspectors (including Thomas Rybakowski) showing the rear wall had already been removed, Mr. Rybakowski and his staff insisted the property remained "imminently dangerous."

45. Worse, the "imminently dangerous" designation was later used to justify demolition of the front portion of the house—an area never cited as unsafe in any violation notice. The City's policy allows these life-altering decisions to be made

with no meaningful oversight, hearing, or procedural safeguards, violating the Fourteenth Amendment.

46. This official policy and the custom of permitting unqualified inspectors to make irreversible safety determinations—without evidence, review, or accountability—have caused significant harm to property owners like Plaintiff and create an ongoing constitutional risk to the public. It constitutes an unconstitutional policy or practice under Monell.

**COUNT TWO — Violation of the Fifth Amendment: Taking Without Just Compensation**

The Fifth Amendment, applied to the states via the Fourteenth Amendment, prohibits taking private property without just compensation.

47. Plaintiff invested significant funds to purchase and repair the property.

48. Defendants demolished the main/front portion of the property, which was never subject to any violation notice, without compensation.

49. The City imposed liens and penalties exceeding the property's value, rendering it financially burdensome, unmarketable, and effectively worthless.

50. These liens accrue daily interest and fines, blocking Plaintiff from selling, refinancing, or using the property.

51. As a result, Plaintiff lost the house and faces substantial debt far exceeding the land's value. No buyer would purchase it, leaving only a City taking without compensation. This deprivation of all beneficial use and economic value constitutes both a physical and regulatory taking in violation of the Fifth Amendment.

52. Accordingly, Defendants' actions violate the Takings Clause, entitling Plaintiff to just compensation, damages, and all other appropriate relief.

**COUNT THREE — Violation of the Fourth Amendment: Unreasonable Seizure of Property**

The Fourth Amendment, applied through the Fourteenth Amendment, prohibits unreasonable seizures of private property by government officials.

54. A seizure occurs when the government intentionally interferes with an individual's property interest. Such action requires a warrant or lawful justification, including an actual emergency.

55. Defendants demolished a portion of Plaintiff's home never subject to any active violation notice or imminent danger, and did so without valid reason or legal authority. The only notice referenced rear wall damage, yet Defendants used it to justify demolishing the front.

56. This warrant-less and permanent destruction constituted an unreasonable seizure in violation of the Fourth Amendment.

57. Defendants are liable under 42 U.S.C. § 1983 for violating Plaintiff's constitutional rights.

**COUNT FOUR — Violation of the Fourteenth Amendment: Denial of Procedural and Substantive Due Process**

59. The Fourteenth Amendment prohibits government actors from depriving any person of property without due process of law.

60. Plaintiff had resolved the cited violation by removing the rear walls.

61. Despite this, Supervisor Thomas Rybakowski authorized and oversaw the demolition, including hiring a contractor, even though Plaintiff had complied with City instructions and the appeal was pending.

62. Inspector Stallworth directed demolition without submitting a formal application or supporting documents for a demolition permit. He used the rear wall issue as a pretext to demolish the front portion of the house, which multiple engineers confirmed was structurally sound.

63. These actions occurred before final adjudication, denying Plaintiff due process.

64. Defendants' arbitrary conduct also violated substantive due process.

65. As a result, Plaintiff lost property and suffered serious financial harm. Defendants are liable under 42 U.S.C. § 1983.

**COUNT FIVE — Civil Rights Violations Under 42 U.S.C. § 1983**

66. At all relevant times, Defendants acted under color of state law.

67. Through the conduct described above—including wrongful demolition, excessive fines, denial of fair procedures, retaliation, and fabrication of evidence—Defendants

deprived Plaintiff of rights secured by the U.S. Constitution, including those protected by the Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments.

68. Defendants' actions were willful, malicious, and taken in reckless disregard of Plaintiff's clearly established constitutional rights.

69. Plaintiff is entitled to compensatory and punitive damages, reasonable attorney's fees, and other relief available under 42 U.S.C. § 1983.

**COUNT SIX — Retaliation for Exercise of Protected Rights (First and Fourteenth Amendments)**

70. Plaintiff exercised constitutionally protected rights by filing administrative appeals, contacting public officials, and seeking legal remedies to prevent demolition of his property.

71. In response, Defendants retaliated by accelerating demolition, denying valid permit applications, and imposing excessive and punitive fines.

72. Defendant Supervisor Tom Ronsky's statement—"You told the BBS a lot"—is direct evidence of retaliatory motive in response to Plaintiff's protected speech and legal activity.

73. This retaliation violated Plaintiff's rights under the First and Fourteenth Amendments and directly resulted in loss of his home and significant property interests.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor and against all Defendants on all counts, and further requests that the Court:

1. Award compensatory damages in the amount of **$1,800,000, or according to proof at trial**, representing loss of Plaintiff's home, out-of-pocket expenses, emotional distress, and related economic harm;

2. Award punitive damages against the individual Defendants in an amount to be determined at trial, sufficient to punish and deter willful, malicious, and reckless violations of Plaintiff's constitutional rights;

3. Order removal, cancellation, or substantial reduction of all unlawful liens imposed by the City of Philadelphia, including but not limited to demolition and abatement charges;

4. Award reasonable attorney's fees and litigation costs pursuant to **42 U.S.C. § 1988** and other applicable law;

5. Grant such other and further relief as the Court deems just, equitable, and proper.

Respectfully Submitted
By
Qianjiang Ruojin Van
The Plaintiff

**VERIFICATION**

I, Qianjiang Kuojin Van, hereby state that I am the Plaintiff in the within action and verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.


_____

Qianjiang Kuojin Van

Case Number: 2:24-cv-05014-js

Dear Clerk:

 Our process service company mailed the amended complaint on July 7, 2025, the first business day following the weekend, as July 5, 2025, fell on a Saturday.

However, upon contacting the Court recently, I was informed that the filing had not yet been received. Out of an abundance of caution, I have sent another copy of the amended complaint to ensure proper and timely filing in light of any potential postal delivery issue.

I appreciate the Court's understanding and consideration under the circumstances.

**Respectfully,**
Qianjiang Kuojin Van