## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QIANJIANG KUOJIN VAN, | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 24-CV-5014** |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SÁNCHEZ, J.**                                                **JANUARY 29, 2026**

In his Amended Complaint,[1] *pro se* Plaintiff Qianjiang Kuojin Van alleges that his constitutional rights were violated when his property at 3427 N. 18th Street in Philadelphia was demolished.  Van brings claims pursuant to 42 U.S.C. § 1983 against Defendants the City of Philadelphia and Department of Licenses and Inspections ("L&I") employees Thomas Rybakowski, who is identified as a supervisor in the Contractual Services Unit, and Gene Stallworth, who is identified as an L&I building inspector.  Defendants have filed a Partial Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 22 (the "Motion")), which Van opposes.[2]  As set forth below, Defendants' Motion will be granted in part and denied in part.  The surviving claims will proceed to discovery.

---

[1] On September 19, 2024, Van initiated this civil action by filing an application to proceed *in forma pauperis* and an initial Complaint.  (*See* ECF Nos. 1, 2.)  The Amended Complaint (ECF No. 14) superseded the prior pleading and is now the operative pleading in this case.  *See Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019).

[2] Van filed a Motion for Leave to File a Sur-Reply in Opposition to Defendants' Motion to Dismiss (ECF No. 34).  The Court will grant the motion.

I.      **FACTUAL ALLEGATIONS**[3]

Van alleges as follows:  He purchased the property at a sheriff's sale and intended to use it as an owner-occupied residence.  (Am. Compl. at 1-2.)  In March 2021, a portion of the rear wall of the house collapsed.  (*Id.* at 2.)  Van hired an engineer, who advised removal of the rear wall but found the front of the house to be in good condition.  (*Id.*)  Van applied for a "make-safe" permit.  (*Id.*)  A permit was issued on July 15, 2021, but was revoked on July 21 "due to a misunderstanding between the homeowner and contractor."  (*Id.* at 3.)  "That day, an investor who repeatedly tried to buy the house warned . . . [Van] it would be demolished unless sold to him."  (*Id.*)  The investor "claimed to have connections with L&I and offered half the prior price, saying he could stop it."  (*Id.*)  "The next morning, a crew arrived but couldn't tear down the sturdy front wall.  The investor later called L&I to proceed with the demolition."  (*Id.*)

Van obtained a permit valid through March 17, 2022.  (*Id.*)  After passing an inspection on August 16, 2021, work began on the property, but the permit was revoked on November 3, 2021, and an "imminently dangerous" notice was posted, halting all work.  (*Id.*)  Van appealed to the Board of Building Standards ("BBS") seeking a determination that the property was not imminently dangerous and requesting removal of the "red notice," because the rear walls had already been demolished and cleared.  (*Id.*)  BBS granted the appeal and instructed Van to obtain a "standard permit" to repair the front porch.  (*Id.*)  BBS found that the property was not imminently dangerous and reclassified the violation as "standard," citing the substantial progress already made.  (*Id.*)

---

[3]  The following factual allegations are taken from the Amended Complaint.  The Court adopts the sequential pagination supplied to the parties' filings by the CM/ECF docketing system.

A new permit was issued and work resumed after passing an inspection on January 24, 2022. (*Id.*) On February 28, an inspector cancelled it again without prior notice. (*Id.*) Van alleges that the cancellation was without any valid basis, as the front porch had been repaired, a new roof installed, the foundation had been rebuilt, and debris had been cleared. (*Id.*)

On March 8, 2022, a new violation was issued based on the "rear wall collapsed" even though the rear wall had already been fully removed. (*Id.*) On March 18, Van filed a second appeal with BBS, which was assigned Case No. HA2022-001304. (*Id.* at 4.) That appeal addressed the ongoing cycle of permit applications and cancellations. (*Id.*) While awaiting a hearing, Van suffered an illness. (*Id.*) After he recovered, he contacted BBS for an update and was instructed to continue to wait for a hearing. (*Id.*)

On September 3, 2022, Van received a "Final Violation Notice" dated August 25, 2022, that had been sent via certified mail with return receipt. (*Id.*) This third notice repeated the same basis as set forth in the March 17, 2021 and the March 8, 2022 violation notices, that the "rear wall collapsed" rendering the property "imminently dangerous." (*Id.*) The notice directed Van to hire a licensed engineer to develop a repair plan and submit an application for a new permit. (*Id.*) It further stated Van had five days to file an emergency appeal. (*Id.*)

On September 6, 2022, the first business day after receiving the Final Violation Notice, Van contacted BBS to inquire why L&I was proceeding with demolition while the March 2022 BBS appeal was pending. (*Id.*) A BBS staff member contacted Defendant Rybakowski and later informed Van "that stopping the demolition might be difficult." (*Id.*) She advised Van to speak directly with Rybakowski. (*Id.*) Van attempted to contact Rybakowski by phone but was unsuccessful. (*Id.*)

On September 7, 2022, Van filed an emergency appeal with BBS, and on September 9, he submitted a new permit application with L&I. (*Id.* at 5.) He asserts these actions were taken within the timeframes set by L&I. (*Id.*) Van contends he applied for the permit because it was his understanding the violation could not be closed without a final inspection, but the inspection could not take place without a valid permit. (*Id.*) "Though the hazardous conditions had already been addressed, the violation remained open technically." (*Id.*) Van further believed "certain L&I employees were attempting to seize his property under false pretenses, using an unsubstantiated claim of 'imminently dangerous' conditions as a pretext." (*Id.*)

On September 9, 2022, Defendant Stallworth applied for a demolition permit which was issued "within a single day." (*Id.*) Van asserts Stallworth directed demolition of the front structure without submitting a formal permit application or supporting documentation, as confirmed by a request Van filed in the Office of Open Records. (*Id.* at 5-6.) He contends the issuance of the demolition permit was "likely based on an informal or verbal request – thereby bypassing all required procedural safeguards." (*Id.* at 6.) Van further alleges the Final Violation Notice cited only the rear wall as dangerous but it had already been removed months earlier. (*Id.* at 5.) He contends Defendants used the rear wall issue as a pretext to demolish the structurally sound front portion of the home. (*Id.*)

Van also sought injunctive relief on September 9, seeking to stop the demolition. (*Id.* at 6.) He avers the City "not only opposed the requested injunction but also filed a counterclaim demanding substantial statutory fines, calculated as daily penalties from March 26, 2021, through September 12, 2022." (*Id.*) According to Van, during the preliminary injunction hearing, Defendants made false and misleading representations to the Court, including the claim that the rear wall was still collapsed as of September 19, 2022, even though it had been removed

in November 2021 and the property had undergone substantial repairs.  (*Id.*)  Van's request for injunctive relief was denied.  (*Id.*)

On September 19, 2022, Van met in person with Rybakowski, and presented photographs of the repaired structure and requested the demolition be halted.  (*Id.* at 4-5.)  Van alleges Rybakowski refused and stated, "You told the BBS (appeal body) a lot," a comment that, to Van, suggested retaliatory intent.  (*Id.* at 5.)

Demolition of the house commenced on September 25, 2022, and was completed on November 2, 2022, despite a pending appeal.  (*Id.*)  After the demolition, the City "imposed substantial abatement fee[s], penalties and increased interest to the land, making it financially burdensome, unmarketable, and effectively worthless."  (*Id.*)

Based on these allegations, Van seeks to impose *Monell* liability on the City.  (*See id.* at 6-8, Count 1.)  He asserts the violations of the following rights secured by the United States Constitution:  Fifth Amendment takings clause (Count 2), Fourth Amendment unreasonable seizure (Count 3), Fourteenth Amendment procedural and substantive due process (Count 4), Seventh Amendment right to a jury trial and Eighth Amendment excessive fines (Count 5), and First Amendment retaliation (Count 6).  (*See id.* at 8-10.)  Van seeks monetary damages and injunctive relief.  (*Id.* at 10-11.)

Defendants have not moved to dismiss Count 3 of the Amended Complaint which alleges Van was subjected to an unreasonable seizure in violation of his Fourth Amendment rights. However, Defendants seek to dismiss Counts 1, 2, 4, 5, and 6 for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the allegations contained in the complaint.  Fed. R. Civ. P. 12(b)(6); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) ("Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." (internal quotation marks and citations omitted)).  The court will accept the factual allegations contained in a complaint as true, but will disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  The Court affords a liberal construction to factual allegations when a complaint is filed by a self-represented litigant.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  When evaluating a motion to dismiss, a court may look to "allegations contained in the other court filings of a *pro se* plaintiff" to clarify statements made in the complaint.  *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (citing, *inter alia*, *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir. 2000) ("[W]hile this case involves a motion to dismiss under Rule 12(b)(6), the Supreme Court . . . confirmed that we may use appellants' brief 'to clarify allegations in the

complaint whose meaning is unclear.'" (quoting *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000))).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Local governments and municipalities are considered persons under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Defendants argue that Van has failed to adequately plead *Monell* liability.  (*See* Mot. at 7-8.)  "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."  *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).  Accordingly, the Court will first consider Defendants' Motion as it pertains to Counts 2, 4, 5, and 6 before addressing the adequacy of Van's *Monell* allegations.

### A.    Fifth Amendment Takings Clause Claim

In Count 2 of the Amended Complaint, Van alleges he invested significant funds to purchase and repair the property and Defendants demolished the "main/front portion of the property," which was never subject to a violation notice, without compensation.  (Am. Compl. at 8.)  He further contends the City imposed liens and penalties exceeding the property's value, "rendering it financially burdensome, unmarketable, and effectively worthless."  (*Id.*)  According to Van, the liens accrue daily interest and fines, "blocking" him from selling or refinancing the property, such that he has been deprived all beneficial use of the property.  (*Id.*)

Defendants move for dismissal of this claim on the basis that Van has not adequately pled a Fifth Amendment Takings Claim because, as Van acknowledges in the Amended Complaint, he is still the owner and possessor of the property. (Mot. at 9 (citing *Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012)).) According to Defendants, Van does not allege that the City actually prevented him from building on or otherwise using the property. (*Id.*) Rather, Van lacks the resources to use the property as he wants due to fines. (*Id.*) Defendants further argue that Van failed to allege the personal involvement of the individual Defendants in this claim. (*Id.*)

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This prohibition applies to state and local governments through the Fourteenth Amendment. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021); *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001). "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019). However, "property is not 'taken' where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition." *Ituah v. City of Philadelphia*, No. 19-5088, 2023 WL 7311182, at *4 (E.D. Pa. Nov. 6, 2023), *aff'd*, No. 23-3140, 2024 WL 3177770 (3d Cir. June 26, 2024). "A municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property." *In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011).

Further, "[a] taking has not occurred simply because a plaintiff has been denied the most profitable use of the property." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 670 (3d Cir. 2022).

A Takings Clause claim is plausible "if the government action 'deprived [the plaintiff] of all or substantially all of the beneficial use' of the property." *In re 106 N. Walnut, LLC*, 447 F. App'x at 308 (quoting *Pinkowski v. Twp. of Montclair*, 691 A.2d 837, 845 (N.J. Super. Ct. 1997)); *see also Duffy v. Kent Cnty. Levy Ct.*, 591 F. App'x 41, 44-45 (3d Cir. 2014) (*per curiam*) (affirming grant of summary judgment where, *inter alia*, plaintiff had "not shown that the lien on his property 'foreclose[d] all economically viable uses of the land'"); *Munoz*, 481 F. App'x at 759 (affirming finding that no taking occurred where plaintiff retained a possessory interest in the property); *3909 Realty LLC v. City of Philadelphia*, No. 21-0030, 2021 WL 2342929, at *5 (E.D. Pa. June 8, 2021) (dismissing Takings Clause claim where plaintiffs did not allege they lost all beneficial use of the property or lost their possessory interest in the property).

Van alleges the City demolished the front structure of the property. He further alleges this portion of his property was never cited as "imminently dangerous." Thus, Van asserts the demolition was not a valid exercise of the City's police powers because there was no imminent danger since the only alleged basis for demolition was the rear wall which was already removed. Van thereby alleges a taking of his property without just compensation. Additionally, Van avers the City imposed liens and penalties, and the City's rules prohibit issuing new permits while compliance fines are unpaid, barring redevelopment. (*See* Resp. at 3-4.) Thus, Van alleges that he has been denied all beneficial use of the property. At this stage of the proceeding, taking Van's allegations as true as the Court must, Van has alleged sufficient facts in support of his Takings Clause claim. *See, e.g.*, *Joyce Outdoor Advert. Wallscapes, LLC v. City of Scranton*, No. 24-0791, 2024 WL 4900015, at *8 (M.D. Pa. Nov. 26, 2024) (denying motion to dismiss Takings Clause claim where plaintiff alleged city's engineer found structure was not deemed an emergency demolition (citing *Deiter v. City of Wilkes-Barre*, 16-132, 2021 WL 2020589, at *8

(M.D. Pa. May 19, 2021) (denying motion for summary judgment on taking claims where "whether the demolition of [plaintiff's] home constituted a valid exercise of police power is an issue for trial"))); *Helbling v. Pebbles*, No. 24-1192, 2025 WL 2653577, at *7 (W.D. Pa. Sept. 16, 2025) (denying motion to dismiss Takings Clause claim where plaintiff alleged the property was left virtually valueless due to defendant's actions and defendant's actions "made it virtually impossible for work of any kind to be completed on the Property, given the repeated stop-work orders, refusals to issue permits, and demands for additional and unnecessary work"). Accordingly, Defendants' motion to dismiss the Takings claim will be denied and the claim will proceed for further factual development. Defendants can raise this issue at the summary judgment stage of these proceedings, if appropriate.

**B.    Due Process Claims**

In Count 4 of the Amended Complaint, Van alleges that his Fourteenth Amendment procedural due process rights were violated because the property was demolished even though he had resolved the cited violation by removing the rear walls. (Am. Compl. at 9.) He avers that Defendant Rybakowski authorized and oversaw the demolition of his property in September 2022, including hiring a demolition contractor, even though Van had complied with City instructions and the BBS appeal he filed in March 2022 was still pending. (*Id.*) Van further contends that Defendant Stallworth directed demolition of the property without submitting a formal application or supporting documentation for a demolition permit, using the rear wall issue as a pretext to demolish the front portion of the house, which multiple engineers confirmed was structurally sound. (*Id.*) Van alleges these steps were taken "before final adjudication." (*Id.*) Additionally, Van contends that Defendants' arbitrary conduct violated his substantive due process rights. (*Id.*)

Defendants move to dismiss the procedural due process claim, contending the facts pled in the Amended Complaint show Van was not denied the right to be heard before his property was demolished, and indeed he filed an appeal with BBS and filed a preliminary injunction which was denied.  (*See* Mot. at 10; Reply at 3-4.)  Defendants argue that Van is upset with the results of the process, which is not a denial of due process.  (*See* Mot. at 10.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  The Fourteenth Amendment's protections encompass real property.  *See Nicholas v. Penn. State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Thus, a deprivation of property should "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).  "Due process does not require that a property owner receive actual notice before the government may take his property."  *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citation omitted).  Rather, due process requires the government to "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* (internal quotation marks and citation omitted).  "In emergency situations, where quick action is necessary and pre-

deprivation process impractical, the state satisfies due process by providing some meaningful

means by which to assess the propriety of the state's action at some time after the initial taking."

*Dvortsova v. City of Philadelphia*, 585 F. Supp. 3d 723, 730-31 (E.D. Pa. 2022) (internal

quotations and alterations omitted).

In his Response, Van further clarifies his allegations as follows:

> In March 2022, Plaintiff filed an appeal with BBS challenging repeated permit
> cancellations.  Despite this, he received a Final Violation Notice on September 3.
> After inquiring on September 6, BBS acknowledged the conflict but did not
> resolve it and advised filing an "emergency" appeal, which Plaintiff did on
> September 7.  On September 9, the City's lawyer informed Plaintiff the
> emergency appeal would not be heard and that the City had decided to demolish
> his house, requiring a TRO to stop it.  Rybakowski and Stallworth acted as the
> City in this decision, demonstrating *Monell* liability through final policymaker
> actions.  Plaintiff filed a TRO and injunction on September 10.  The City
> counterclaimed on September 16 for $3,200/day over 536 days ($1,715,200) in
> punitive fines unrelated to costs.  Three days later, the counterclaim was
> transferred to the Code Enforcement Program without notice or opportunity to be
> heard, stripping Plaintiff of his jury and procedural rights.  Plaintiff appealed, but
> the City imposed a $170,000 lien while jurisdiction was lacking, subject to later
> adjustment.

(Resp. at 5.)

Thus, Van alleges that Defendants proceeded with the demolition while the March BBS

appeal was still pending, and that he pursued the remedies provided for in the Final Violation

Notice but was not given a full opportunity to be heard before demolition commenced.

Ultimately, he asserts that the process provided was constitutionally insufficient and Defendants'

argument that he received "some process" is irrelevant.  (*See id.*)  Van posits that the process he

received pertained to the removal of the rear wall, and he received no notice and no hearing for

the City's decision to demolish the front structure and foundation.  (*Id.*)  Underlying the alleged

procedural deficiencies is Van's additional allegation that there was no basis to demolish the

property because there was no imminent danger at that time.  Indeed, he contends that he had

successfully appealed the November 2021 "imminently dangerous" designation based on the

"collapsed rear wall" to BBS and the violation was reclassified as "standard."  (*See* Am. Compl.

at 3.)  If Van's allegations are accepted as true, as they must be at this stage of the litigation, he

has sufficiently alleged facts to raise an inference that he did not receive constitutionally

adequate process.  *See, e.g., Bestman v. City of Philadelphia*, No. 25-709, 2025 WL 1139273, at

*3 (E.D. Pa. Apr. 17, 2025) (where plaintiff alleged facts challenging L&I inspector's

"imminently dangerous" determination, "whether the City's policies adequately guard against

deprivations of procedural due process in violation of the Fourteenth Amendment . . . is an

inquiry that expands beyond the scope of this Court's review on a motion to dismiss and hinges,

in part, on a factual issue of whether the property was "imminently dangerous"); *Joyce Outdoor

Advert. Wallscapes, LLC*, 2024 WL 4900015, at *10 ("Viewing the facts in the light most

favorable to the Plaintiff, Plaintiff plausibly alleges facts giving rise to the inference that a bona

fide emergency did not exist, such that the actions of Defendants were not justified under the

circumstances."); *Para v. City of Scranton*, No. 06-2432, 2008 WL 2705538, at *15 (M.D. Pa.

July 10, 2008) ("The Court agrees with the Plaintiff that the City of Scranton did not have a

strong interest which would require only post-deprivation process due to its finding that the

Plaintiff's structure was not an immediate danger to public safety, since the City waited

approximately fifteen (15) months between the time of the first notification . . . and the time of

the hearing . . . before taking action with respect to Plaintiff's building.").

　　　　With regard to Van's substantive due process claim, Defendants argue the claim should

be dismissed with prejudice because the claim is more appropriately analyzed as a Fourth

Amendment seizure claim, which he also has pled.[4]  (*See* Mot. at 11.)  They further argue that, in

any event, the demolition of an imminently dangerous structure does not shock the conscience

and Philadelphia's Property Maintenance Code, the policy at issue here, does not allow for

arbitrary action.  (*See* Reply at 3.)

      A substantive due process violation occurs where a government official engages in "an

abuse of executive power so clearly unjustified by any legitimate objective of law enforcement"

that it is barred by the Fourteenth Amendment.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840

(1998).  "[T]he core of the concept" of due process is "protection against arbitrary action," and

"only the most egregious official conduct can be said to be arbitrary in the constitutional sense."

*Id.* at 845-46 (internal quotation and citation omitted).  Thus, the substantive component of the

Due Process Clause is violated only where a governmental action "can properly be characterized

as arbitrary, or conscience shocking, in a constitutional sense."  *Id.* at 847 (internal quotation and

citation omitted).  For example, "[i]n the land-use context, . . . [a court considers] evidence of

corruption, self-dealing, intentional interference with constitutionally protected activity, virtual

'takings,' or bias against an ethnic group on the part of local officials."  *Button v. Snelson*, 679 F.

App'x 150, 154 (3d Cir. 2017) (citation omitted).

      In his Response, Van argues that his substantive due process claim addresses the alleged

abuses of power throughout the events that are the subject of the Amended Complaint, not

merely the final seizure.  (Resp. at 6.)  He points to his allegations that Defendants: repeatedly

resurrected the false claim of a "collapsed rear wall" long after it was removed and after BBS

had downgraded the violation; proceeded with demolition while the March 2022 BBS appeal

---

[4] As noted *supra*, Defendants have not moved for dismissal of Count 3 of the Amended
Complaint which alleges a violation of Van's Fourth Amendment rights against unreasonable
seizure.

was still pending; and filed a $1.715 million punitive counterclaim in direct response to Van's

TRO petition, and then administratively transferred it to the Code Enforcement Program "to

avoid a jury, demonstrate[ing] an intent to retaliate and coerce, not to adjudicate." (*Id.*)  Reading

the Amended Complaint as a whole and taking all inferences in favor of Van as the Court is

required at this stage, Van has presented sufficient facts to survive the motion to dismiss his

substantive due process claim based on Defendants' alleged arbitrary course of conduct.  *See,*

*e.g.*, *Helbling*, 2025 WL 2653577, at *6 (denying motion to dismiss substantive due process

claim where plaintiff pled conscience-shocking conduct through the repeated actions of the

defendants and noting these are ultimately issues of fact to be resolved through discovery).

Accordingly, Defendants' motion to dismiss Van's due process claims will be denied.

C.      **Seventh and Eighth Amendment Claims**

In Count 5 of the Amended Complaint, Van references the Fourth, Fifth, Seventh, Eighth,

and Fourteenth Amendments.  (*See* Am. Compl. at 10.)  Reading the pleading as a whole, along

with Van's Response and Sur-Reply, the Court construes Count 5 as presenting claims pursuant

to the Seventh and Eighth Amendments only.

In support of his Seventh Amendment claim, Van alleges that he filed for a temporary

restraining order and preliminary injunction on September 10, 2022, after he was informed by an

attorney for the City that his appeal with BBS would not be heard.  (*See* Am. Compl. at 6; Resp.

at 5.)  He further states that the City counterclaimed on September 16 for punitive fines of

$3,200/day for 536 days, amounting to $1,715,200, and three days later the counterclaim was

transferred to the Code Enforcement Program.  (Am. Compl. at 6; Resp. at 9; Sur-Reply at 3.)

Van contends that this transfer violated his Seventh Amendment right to a jury trial.  (*See* Resp.

at 6-7.)  However, the Seventh Amendment is not binding on the states.  *See Gasperini v. Ctr. for*

*Humanities, Inc.*, 518 U.S. 415, 432 (1996) ("The Seventh Amendment . . . governs proceedings in federal court, but not in state court[.]"); *Minneapolis & St. L. R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916) ("[T]he 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same."); *see also McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010) (Fourteenth Amendment Due Process Clause does not make the Seventh Amendment binding on the states).  Accordingly, the Seventh Amendment claim will be dismissed.

The Eighth Amendment, as applied to the states through the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII; *Timbs v. Indiana*, 586 U.S. 146, 150 (2019).  The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"  *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993)).  "By its plain language, the Excessive Fines Clause of the Eighth Amendment is violated only if the disputed fees are both 'fines' and 'excessive.'"  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 420 (3d Cir. 2000).  To determine whether the fine is excessive, a court must consider whether the fine is "grossly disproportional to the gravity of the . . . offense."  *Bajakajian*, 524 U.S. at 336-37.

In the Amended Complaint, Van alleges the City violated the Eighth Amendment when it opposed his requested injunction and filed a counterclaim "demanding substantial statutory fines, calculated as penalties from March 26, 2021, through September 12, 2022."  (Am. Compl. at 6.) He claims, "[a]fter demolition related works, the City imposed substantial abatement fee,

16

penalties and increased interest to the land, making it financially burdensome, unmarketable, and effectively worthless." (*Id.*)  Throughout the Amended Complaint, Van alleges that the City imposed "liens and penalties" exceeding the property's value, rendering it effectively worthless. (*Id.*; *see, e.g., id.* at 8 ("These liens accrue daily interest and fines, blocking Plaintiff from selling, refinancing, or using the property.").)

Defendants move to dismiss this claim on the basis that Van failed to plead what the fines at issue are, why they were assessed, and what they amount to.  (*See* Mot. at 12.)  Van clarifies in his Response, however, that this claim is based on punitive, disproportional fines imposed by the City, including a $170,000 lien on property that is only worth $37,500, and the City's counterclaim that requested a statutory penalty totaling $1.715 million.  (*See* Resp. at 7.)  In their Reply, Defendants argue that the amount the City requested in the counterclaim is not an "excessive fine imposed" because it was never assessed against Van, and indeed, he refers to this amount as a "potential $1.7 million penalty" in his Response.  (*See* Reply at 4-5.)

The Court agrees with Defendants that there is no basis for an Eighth Amendment claim based on the $1.715 million counterclaim requested by the City in the state proceedings because it appears that it was not imposed.  However, the Court will allow Van's Eighth Amendment claim to proceed to discovery because Van also alleges that the fines and liens that were imposed are punitive, because "rear wall collapsed" was merely a pretext for the actions taken by Defendants to demolish the house since the rear wall had been removed in November 2021.  He further alleges that the "liens and penalties" are excessive, amounting to $280,000, and are disproportional to the property's value which is assessed at $37,000.  (*See* Resp. at 4; Sur-Reply at 2.)  Accordingly, the Court declines to dismiss the Eighth Amendment claim in its entirety.  At this early stage of the litigation, the Court must accept Van's allegations as true and draw all

reasonable inferences in his favor.  The denial of the motion to dismiss the Eighth Amendment

claim is without prejudice to Defendants' ability to raise this issue in a motion for summary

judgment.

### D.    First Amendment Retaliation

In assessing a First Amendment retaliation claim, the Court must consider whether a

plaintiff has plausibly alleged: (1) he engaged in conduct protected by a right in the Constitution,

(2) the defendants engaged in retaliatory action sufficient to deter a person of ordinary firmness

from exercising his constitutional rights, and (3) a "causal link" existed between the protected

activity and the retaliatory action.  *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir.) (internal

quotations and citation omitted), *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560

(2024).  "To establish the requisite causal connection a plaintiff usually must prove either (1) an

unusually suggestive temporal proximity between the protected activity and the allegedly

retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."

*Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren

W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  The defendant must be

aware of the protected conduct to establish the requisite causal connection.  *Cooper v. Menges*,

541 F. App'x 228, 232 (3d Cir. 2013) (citations omitted).

Defendants move for dismissal of the First Amendment claim, arguing that there was no

"sudden escalation" of the demolition process as Van alleges because the City was proceeding

with the demolition before Van made his allegedly protected speech, negating any causal link.[5]

---

[5] Defendants initially argued that Van's alleged protected speech occurred after
November 2021 and before January 24, 2022, and the property was demolished more than six
months after the speech.  (*See* Mot. at 13.)  They also asserted violation notices labelling the
property as "imminently dangerous" were issued beginning in March 2021, and therefore,
occurred before his speech.  (*Id.* at 13-14.)  In his Response, Van argues that filing administrative

(Mot. at 13-14; Reply at 5.)  Additionally, Defendants argue Van fails to plead that Defendant Stallworth was aware of the protected speech, and therefore, it cannot be inferred he had a retaliatory motive.  (Mot. at 14; Reply at 5.)

Defendants' arguments are not persuasive.  In the Amended Complaint, as clarified by his Response, Van alleges that he received the Final Violation Notice on September 3, 2022, and contacted BBS on September 6 to inquire why L&I was proceeding with demolition while he already had a pending appeal.  (Am. Compl. at 4.)  BBS contacted Defendant Rybakowski that same day and then informed Van "that stopping the demolition might be difficult" and he should speak with Rybakowski directly.  (*Id.*)  Van tried unsuccessfully to contact Rybakowski by phone but eventually met with him in person on September 19.  (*Id.*)  At that meeting, Rybakowski refused to halt the demolition and stated to Van, "You told the BBS (appeal body) a lot."  (*Id.* at 5.)  In the meantime, Van filed another appeal with BBS on September 7, and applied for another permit on September 9.  (*Id.* at 5, 6.)  The demolition permit was issued on September 9 as well.  (*Id.* at 6; Resp. at 9.)  Van further contends that he filed for a TRO in state court on September 10, the City filed a counterclaim seeking approximately $1.7 million in fines on September 16, and transferred the matter to the Code Enforcement Program on September 19. (*See* Resp. at 9.)

Based on the foregoing, the Court understands Van to allege that he engaged in several instances of protected activity, including his communications and appeals with BBS and the filing of the TRO petition in state court. *See, e.g.*, *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (*per curiam*); *Sisk v. Sussex Cnty.*, No. 11-0121, 2012 WL 1970879, at *9 (D. Del.

---

appeals with BBS and seeking injunctive relief in state court are protected activities in which he engaged.  (*See* Resp. at 8.)  In their Reply, Defendants do not dispute that these actions constitute protected activity.

June 1, 2012) (appeal to county board of adjustment fell within the category of activities

protected by the First Amendment) (citing *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387

(2011) ("The Supreme Court has recognized that the First Amendment "protects the right of

individuals to appeal to courts and other forums established by the government for resolution of

legal disputes.")).

Additionally, the Court understands Van to allege several instances of retaliatory action.

Putting aside Van's allegations pertaining to the counterclaim and the transfer of his state court

filing to the Code Enforcement Program, Van claims that Defendant Rybakowski authorized and

oversaw the demolition, including hiring a contractor even though Van had complied with City

instructions and the BBS appeals were pending.  (Am. Compl. at 9.)  Van also alleges that

Defendant Rybakowski was aware that Van filed an emergency appeal with BBS and stated to

Van, "[y]ou told the BBS a lot," allegedly demonstrating retaliatory animus.  Van also alleges

that Stallworth directed the demolition and that Defendants retaliated, *inter alia*, by improperly

accelerating the demolition.  (*Id.*)  Van asserts that the "demolition permit was issued within a

single day – likely based on an informal or verbal request – thereby bypassing all required

procedural safeguards." (*Id.* at 6.)  Thus, with respect to Defendant Stallworth, Van alleges that

he accelerated the demolition process, at least in part by obtaining a demolition permit without

filing a formal application.  Further, reading the Amended Complaint as a whole, as clarified by

Van's Response, Van plausibly alleges temporal proximity between the instances of protected

activity and the alleged instances of retaliatory conduct.  Accordingly, Van has adequately pled a

First Amendment retaliation claim and the Court will deny Defendants' motion to dismiss this

claim.

E.    *Monell* Liability

A municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the actions of its employees.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  Rather, to plead a § 1983 claim against a municipality, a plaintiff must allege the execution of the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*

Defendants argue in their Motion that Van has insufficiently pled *Monell* liability because, while he alleges the City has a policy of allowing building inspectors to unilaterally designate properties as imminently dangerous, Van does not specify the constitutional injury or what constitutional provision is implicated by the policy.  (*See* Mot. at 8.)  They further contend

Van does not present any *Monell* theories of liability against the City in Counts 2 through 6 of the Amended Complaint.  (*Id.*)  In his Response, Van identifies the City policy at issue as Philadelphia Code, § PM-110.  (*See* Resp. at 1-2.)  This code section, which Van attached to his Response, sets forth the process for addressing "Imminently Dangerous Structures."  (*See* ECF No. 30-2.)  In their Reply, Defendants acknowledge Van' explanation that Count 1 should be read in conjunction with Counts 2 through 6.  (Reply at 1.)  But they maintain that Van's *Monell* allegations nonetheless fail because § PM-110 is not unconstitutional and Van merely asserts a claim based on *respondeat superior* liability.  (*Id.* at 1-3.)

The Court is not persuaded by Defendants' argument.  Construing the allegations of the *pro se* Amended Complaint liberally, and as Van posits in his Response, Count 1 is the vehicle for holding the City liable under § 1983 for the specific constitutional violations alleged in the subsequent counts.  (*See* Resp. at 2.)  As clarified in his Response, Van indeed alleges throughout the Amended Complaint that the City's policy, § PM-110, and the City's custom of implementing the policy, were the moving forces behind his injuries.  (*See* Am. Compl. at 6-8; Resp. at 2-3.)  He alleges that the policy establishes a flawed process, with a high risk for abuse, that "grants unchecked discretion" enabling L&I employees to designate a property as "imminently dangerous" when it is not.  (*See* Am. Compl. at 1, 6-8; Resp. at 3.)  Van further contends that Defendants used the "imminently dangerous" designation to obtain the demolition permit; therefore, the policy was the "necessary and direct trigger for the demolition and resulting constitutional injuries."  (Resp. at 3; Sur-Reply at 1.)  As discussed above, taking the allegations in the Amended Complaint as true, and reading the Amended Complaint as a whole, Van has sufficiently pled constitutional violations in Counts 2 through 6 of the Amended

Complaint, with the exception of the Seventh Amendment claim.  Accordingly, Defendants'

motion to dismiss Van's claims based on *Monell* liability will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss pursuant to Rule

12(b)(6) (ECF No. 22) will be granted in part and denied in part.  Defendants' motion to dismiss

is granted only as to the Seventh Amendment claim and is denied in all other respects. The

surviving claims will proceed to discovery for further factual development.  An Order follows,

directing Defendants to respond to the Amended Complaint (ECF No. 14) in accordance with

this Memorandum and Federal Rule of Civil Procedure 12(a)(4).

**BY THE COURT:**


 **/s/ Juan R. Sánchez**

**JUAN R. SÁNCHEZ, J.**